Tyler B. Ayres, Bar No. 9200
Daniel Baczynski, Bar No. 15530
AYRES LAW FIRM
12339 S. 800 E. Ste. 101
Draper UT 84020
(801) 255-5555
Tyler@AyresLawFirm.com
Daniel.ayreslaw@gmail.com

---

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| Nichole K. Gunther,<br><br>　　　On behalf of plaintiff and class,<br><br>vs.<br><br>Midland Credit Management, Inc, and Midland Funding, LLC,<br><br>　　　Defendant. | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Case No:  2:17-cv-704-CW<br><br>Judge: Waddoups |

Nichole K. Gunther (Gunther or Plaintiff), by and through her attorney, submits this memorandum in opposition to Defendants' Motion to Dismiss her Complaint and respectfully requests the Court deny dismissal and allow Plaintiff to conduct discovery on the elements of a prospective class and on the merits of her claim.

## INTRODUCTION

The Defendants contend that their letter to the Plaintiff that states she is "pre-approved for a discount program designed to save her money"… "to.. put this debt behind you" is not confusing to the least sophisticated consumer because it also states separately in the letter that "we will not sue you". Separate and apart from suing her though, Defendants ask her to enter into a payment plan or pay a lump sum to satisfy the debt. But what consideration would support

any payment or payment plan solicited by Defendants? Utah law is clear that a time barred debt is not consideration for an agreement to pay the time barred debt. *Manwill v. Oyler*, 11 Utah 2d 433, 435, 361 P.2d 177, 178 (Sup.Ct. 1961). Consistent with this rule of law, Utah has passed a statute that prohibits the sale of time barred debt.

Defendants seek to limit that statute to a prohibition on assigning debts to file suit on time barred debts. Given that there is no legal basis to file a suit on a time barred debt, there is little reason for the Utah legislature to enact a law that says the same thing. Courts do not construe statutes in a way to render them superfluous or meaningless which is the end result of the interpretation advocated by Defendants. Plaintiff submits a reasonable interpretation of the statute is that the inclusion of the limiting phrase "that all accounts shall be within the statute of limitations as provided by law" was not to limit the application of the prohibition as Defendants suggest but merely to be thorough in what was being prohibited by the statute.

Also, the Defendants' contention that the statute cited by the Plaintiff in her complaint only affects acts taken before the expiration of the statute of limitation ignores that Utah has held that agreements in writing after the expiration of the statute of limitations may be enforced under certain circumstances. Whether covered by the statute or not, Defendants effort to have the Plaintiff and others enter into payment plans regarding the time barred debt is an effort to establish an enforceable agreement to pay the debt after the statute of limitations has run. If not legally enforceable, it certainly gives the Defendants something to hold over the Plaintiff and others if they do agree to a payment plan of some sort.

## FACTUAL BACKGROUND

Years ago, Gunther applied for and was approved for a Target National Bank Account (Target Account). Gunther used the Target Account to make purchases for personal, family, and

2

household purchases, resulting in an outstanding balance. Gunther stopped making payments on her Target Account and the statute of limitations on the debt ran while in Target's possession without Target taking any action to enforce the obligation.

Target sold Gunther's obligation, which was outside the statute of limitations and unenforceable, to Midland Funding. Midland Funding is a debt collector under the Fair Debt Collection Practices Act (FDCPA) and is in the business of purchasing debt that is outside the statute of limitations for pennies on the dollar. Midland Funding uses Midland Credit Management (MCM), another debt collector, to then collect on the unenforceable debts.

As debt collectors, Midland Funding and MCM are governed by the FDCPA and Utah statutes, including the Utah Consumer Sales Practices Act. Both the FDCPA and Utah law precludes the use of false or misleading representations in the use of debt collection. Furthermore, Utah Code Ann. § 12-1-8 prevents the assignment of debt barred by the statute of limitations.

On February 23rd, 2017, MCM sent Gunther a collection letter regarding the unenforceable balance on Gunther's Target account. The letter stated Gunther had been "pre-approved for a discount program designed to save you money. Act now to maximize your savings and put this debt behind you…". The letter then provided three options: (1) 40% OFF ( a single payment of $195.38 due on 3-25-2017); (2) 20% OFF (3 monthly payments of $86.83 with the first payment due on 3-25-2017); and (3) Monthly Payments As Low As: $50 per month.

The letter did not state the debt was outside the statute of limitations, the debt was unenforceable, the debt was assigned to Midland Funding in violation of Utah law, or that any payment made by Gunther would be a gift to MCM as the moral obligation to pay a debt outside

the statute of limitations does not constitute consideration in Utah. More importantly, the letter omitted that entering into a payment plan for the unenforceable debt may restart the statute of limitations on the obligation. Instead, the letter represented payment on the obligation would result in Gunther saving money and putting this debt behind her.

## **ARGUMENT**

### I.     Midland Funding is a debt collector and can be found liable under the FDCPA.

Defendant argues in a footnote that the FDCPA claims against Midland Funding should be dismissed because it only purchased the debt and did not personally try to collect on the debt. Defendant's argument rests entirely on the holding of the Supreme Court *Henson v. Santander Consumer USA, Inc.*, 137 S. Ct. 1718, 1721 (2017). Henson held that an entity that "regularly" purchases defaulted debts to collect for its own account is not a "debt collector" under the Fair Debt Collection Practices Act ("FDCPA") pursuant to the second prong of the definition in 15 U.S.C. § 1692a(6) covering a person who "regularly collects or attempts to collect ... debts owed or due ... another." Thus, Defendants do not address the dispositive issue–that Congress chose to subject it to FDCPA coverage under the first prong of the § 1692a(6)'s alternative definition applicable to an entity engaging "in any business the principal purpose of which is the collection of any debts." The Supreme Court expressly noted in Henson that "we do not attempt to" address this "principal purpose" prong because "the parties haven't much litigated that alternative definition and "in granting certiorari we didn't agree to address it." *Id*. Defendant's exclusive reliance on Henson is accordingly unavailing.

Defendant's sole business, as shown by the specific allegations in the complaint, is to purchase portfolios of defaulted consumer debts at steep discounts for pennies on the dollar and then attempt to collect those debts from individual consumers such as Plaintiff. This business

model is precisely the type of collection of debt activity that the plain language of the "principal purpose" prong covers. This alternative definition excludes the "owed or due another" component of the second definition that compelled the result in *Henson*, thus eliminating any basis for Defendant to claim that because it is the current owner of the debt it is exempt from Congress's efforts to rein in and regulate Defendant and its fellow professional debt collection industry members.

This conclusion is confirmed by other sources. For example, the seminal opinion of the 11th Circuit in *Davidson v. Capital One Bank (USA)*, N.A., 797 F.3d 1309 (11th Cir. 2015), the original precedent establishing the rule that the Supreme Court adopted in *Henson*, thoroughly explained how its ruling still preserved the FDCPA's applicability under the "principal purpose" definitional prong to a professional bad debt portfolio buyer such as Defendant. 797 F.3d at 1316 n.8. The Supreme Court's pinpoint citation to Davidson when identifying the Circuit conflict precipitating its grant of certiorari expressly referenced the portion of the Davidson ruling preserving this distinction. *Henson*, 137 S. Ct. at 1721. In addition, years of regulatory enforcement by the agencies chosen by Congress to administer the FDCPA have consistently applied this statute to the bad debt portfolio buyer industry. This history shows the continued need for FDCPA coverage and vigorous enforcement as to this industry and that those engage in the collection of debt as their principal purpose are covered by the FDCPA.

A. *Henson Does Not Apply to "Principal Purpose" Debt Buyers*

In *Henson*, the Supreme Court unanimously held that Santander was not a debt collector under one of the FDCPA's two definitions of "debt collector." This narrow opinion held that Santander was not subject to the FDCPA as an entity "regularly" collecting debts "owed or due another." The Supreme Court explicitly stated that it was not addressing application of the

FDCPA's alternative "principal purpose" definition, which was not at issue since it had not been

presented by the parties and did not fall within the scope of its grant of review. *Id*. As the Court

of Appeals below had noted, "The complaint does not allege, nor do the plaintiffs argue, that

Santander's principal business was to collect debt, alleging instead that Santander was a

consumer finance company." *Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131, 137 (4th

Cir. 2016).

The record in Henson showed that Santander was in fact in the auto finance business and

thus its principal business was extending credit. It purchased a portfolio of auto paper from

CitiFinancial. A percentage of the $3.55 billion portfolio, consistent with the usual default rates

on consumer automobile paper, was in default. The plaintiffs' debts were among those in default.

See 817 F.3d at 134, 140; *Henson v. Santander Consumer USA, Inc.*, 2014 WL 1806915, at *4

(D. Md. May 6, 2014).

The relevant portion of the FDCPA definition of "debt collector" examined in *Henson* is

"any person who uses any instrumentality of interstate commerce or the mails in any business the

principal purpose of which is the collection of any debts, or who regularly collects or attempts to

collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15

U.S.C. §1692a(6). Plainly, "[t]he FDCPA establishes two alternative predicates for 'debt

collector' status — engaging in such activity as the 'principal purpose' of the entity's business

and 'regularly' engaging in such activity. 15 U.S.C. § 1692a(6)." *Goldstein v. Hutton, Ingram,*

*Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 61 (2d Cir. 2004); accord, *Davidson v. Capital*

*One Bank (USA), N.A.*, 797 F.3d 1309, 1316 n.8 (11th Cir. 2015); *Schlegel v. Wells Fargo Bank,*

*N.A.*, 720 F.3d 1204, 1208 (9th Cir. 2013); *Hester v. Graham, Bright & Smith*, 289 Fed. Appx.

35, 41 (5th Cir. 2008); *Little v. World Fin. Network, Inc.*, 1990 WL 516554, *2–4 (D. Conn. July

26, 1990) ("the two prongs of the statutory definition of debt collector are separated by a comma and the word 'or', indicating that there are alternative definitions."). An entity meeting either one of the two definitions qualifies as a debt collector. See *Davidson v. Capital One Bank (USA), N.A.*, supra.

The Henson opinion held that, because Santander owned all legal and equitable rights to the debts in question, it did not qualify under the "regularly collects" part of the definition because the debts that it was collecting were not "owed or due or asserted to be owed or due another." The opinion does not purport to address entities engaged in "any business the principal purpose of which is the collection of any debts," and that portion of the statutory definition was disclaimed in briefs and oral argument. The Supreme Court accordingly limited the focus of its opinion:

> Second, the parties briefly allude to another statutory definition of the term "debt collector"—one that encompasses those engaged "in any business the principal purpose of which is the collection of any debts." §1692a(6). But the parties haven't much litigated that alternative definition and in granting certiorari we didn't agree to address it either. [¶] With these preliminaries by the board, we can turn to the much narrowed question properly before us.

*Henson*, 137 S. Ct. at 1721

Thus, as shown below, a debt buyer such as Defendant, whose primary or only business purpose is the acquisition and collection of portfolios of defaulted debts, remains a covered debt collector under the FDCPA.

> B.  *Both "Regular" Debt Collectors and "Principal Purpose" Debt Buyers Are Regulated By The FDCPA Because They Can Operate Without Regard to Any Need to Preserve Consumer Good Will*

One justification for treating third party debt collectors and persons primarily engaged in the purchase and collection of debt as covered by the FDCPA is the fact that such entities do not need to preserve consumer "good will." According to the legislative history of the FDCPA,

creditors, "who generally are restrained by the desire to protect their good will when collecting past due accounts," are not covered by the FDCPA, but entities who may have "no future contact with the consumer and often are unconcerned with the consumer's opinion of them," are covered. S. Rep. 95–382, at 2 (1977), 1977 WL 16047, *2, reprinted in 1977 U.S.C.C.A.N. 1695, 1696. *Aubert v. American General Finance, Inc.*, 137 F.3d 976, 978 (7th Cir.1998) ("Because creditors are generally presumed to restrain their abusive collection practices out of a desire to protect their corporate goodwill," creditors who attempt to collect debts "in their own name and whose principal business is not debt collection ... are not subject to the [FDCPA].")

Neither third party collectors, nor in particular, entities whose principal or sole business is the collection of debts, have "good will" in that sense–they are simply interested in collecting and are not interested in getting business in the future from the consumer. See, e.g., *Gonzales v. Arrow Fin. Servs.*, LLC, 660 F.3d 1055, 1059 n. 1 (9th Cir. 2011) (referencing "the sizeable growth in the debt buying industry" and documenting "that the average price for purchase of an obsolete debt at $0.045 per dollar"). Their client is not the consumer at all, but the merchant or creditor that hires them or sells debts to them. As one court explained:

> [T]here exists a logical distinction between the two types of entities identified in the alternative segments of the definition. The primary activity of an ordinary retailer (for example) is not the collection of debts, though it may regularly try to collect debts from its own customers. Such a company is constrained naturally in its debt collection activities with its own customers by concern over the effect of generating adversarial relationships. No such natural constraints exist if a company whose primary purpose is not debt collecting, such as a retailer, regularly collects debts for other companies, however, since any adversarial relationships stemming from debt collecting are generated with other companies' customers, and do not affect that company's primary activity. Furthermore, if a company's primary purpose is debt collection, then the natural constraints also do not apply, since that company's primary purpose is not dependent upon favorable relationships with customers. Thus, there are two situations where natural constraints do not protect against objectionable debt collection practices. The statutory definition of debt collector covered by the Act's prohibitions precisely identifies these two situations.

*Little v. World Fin. Network, Inc.*, 1990 WL 516554, *2–4 (D. Conn. July 26, 1990); accord *Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d at 1316 n.8.

However, a company like Santander, which is basically a credit grantor but acquires defaulted debts with sufficient frequency to meet the "regularly" test, does have "good will" concerns and does want to obtain further business from consumers.

Defendant Midland Funding in contrast does not have such concerns. Its insulation from such market-based forces and constraints may explain at least in part the unfortunate history of predatory and unlawful collection misconduct documented by the FTC and the CFPB while enforcing the FDCPA against the defendant's bad debt portfolio buyer industry. See 15 U.S.C. § 1692l (Administrative enforcement). Among those actions is the following sampling that illustrates the critical need for FDCPA coverage of the bad debt portfolio buyer industry: *United States v. Capital Acquisitions & Management Corp.*, 2004 WL 577482 (2004) (FTC News Release, Consent Decree); *In re Encore Capital Group, Inc., Midland Funding, L.L.C., Midland Credit Management, Inc., and Asset Acceptance Capital Corp.*, 2015 WL 5667140 (Sept. 9, 2015) (CFPB Consent Order); *In re Portfolio Recovery Associates, L.L.C.*, 2015 WL 5667141 (Sept. 9, 2015) (CFPB Consent Order); see also FTC, Repairing a Broken System: Protecting Consumers. in Debt Collection Litigation and Arbitration (July 2010); FTC, The Structure and Practices of the Debt Buying Industry (Jan. 2013).

II.     Midland Funding violated Utah Code Ann. § 12-1-8, and therefore the FDCPA and UCSPA, by purchasing debts that are outside the statute of limitations.

Utah has a statute that precludes debt collectors purchasing accounts that are outside the statute of limitations. Midland Funding's business practice is to purchase debts that are outside of the statute of limitations for pennies on the dollar and having MCM attempt to collect on these debts. Because Utah has specifically outlawed the practice of purchasing outlawed debts,

Midland Funding's practice of purchasing the debts for the purpose of collection constitutes an unfair and unconscionable means of collecting debt in violation of the FDCPA and the Utah Consumer Sales Practices Act (UCSPA).

    A.   *The proper interpretation of Utah Code Ann § 12-1-8 is that collectors may only receive accounts, take assignment of accounts for the purpose of collection, and file suit on the accounts if the accounts are within the statute of limitations.*

Utah Code § 12-1-8 governs as follows:

> Any collector having complied with the provisions of this chapter, may receive accounts, bills or other indebtedness, take assignments for the purpose of collections, and at the direction of the assignor bring suit as assignee, provided however, that all accounts shall be within the statute of limitations as provided by law.

Plaintiff reads this statute as precluding collectors from engaging in any of the activities detailed in Utah Code § 12-8-8 if the debt is outside the statute of limitations, whereas Defendant asks the Court to narrowly interpret the requirement that the accounts shall be within the statute of limitations only if the party seeks to bring suit.

In support of Defendants' interpretation, Defendants argue the Court should apply the "last antecedent" rule to the statute. The rule of the last antecedent," under which "a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Barnhart v. Thomas*, 540 U.S. 20, 26, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003). The rule of the last antecedent, however, "is not an absolute and can assuredly be overcome by other indicia of meaning." *Id* at 26.

The Utah Supreme Court made this plain in *LPI Services v. McGee*, 215 P.3d 135, 140, 2009 UT 41, ¶ 15 (Utah,2009):

> Under the rule of the last antecedent, " '[q]ualifying words and phrases are generally regarded as applying to the immediately preceding words, rather than to more remote ones.' " *Day v. Meek*, 1999 UT 28, ¶ 10, 976 P.2d 1202 (quoting *Salt Lake City v. Salt Lake County*, 568 P.2d 738, 740 (Utah 1977)). But the rule of the last antecedent does not mandate that qualifying rules and phrases only apply to the immediately preceding

words; rather when given a choice between the immediately preceding words and more remote words, we prefer the words closer in proximity to the qualifying words and phrases. This rule does not prevent us from deciding that qualifying words and phrases apply to " 'several preceding terms of the same character.' " Id. ¶ 11 (quoting *Salt Lake City*, 568 P.2d at 741). Moreover, rules of statutory construction, such as the rule of the last antecedent, " 'are useful guides, but poor masters[,] and they should not be regarded as having any such rigidity as to have the force of law, or distort an otherwise natural meaning or intent.' " Id. ¶ 10 n. 4 (quoting *Salt Lake City*, 568 P.2d at 741).

Applying the rule of last antecedent to § 12-8-8 raises questions which suggest an alternative meaning, the first being the purpose of the limiting phrase. If the limiting phrase regarding debts outside the statute of limitations was only intended to apply to a creditor's ability to bring suits brought, why include the limiting language at all? After all, Utah has caselaw and other statutes precluding a party from bringing suit after the statute of limitations has passed. *See e.g.* Utah Code Ann. § 78B-2-113. This interpretation results in the language being redundant and superfluous, and in interpreting statutes, courts should not interpret laws as to make any language superfluous. *United States v. Power Eng'g Co.*, 303 F.3d 1232, 1238 (10th Cir. 2002).

There are additional issues that arise with this narrow interpretation regarding the specific language used by the legislature. In the limiting phrase, the statute states: "provided however, that all accounts shall be within the statute of limitations as provided by law". Utah's legislature specifically chose to use the word accounts (referencing back to the first part of the statute) rather than suit (or some other word designating a lawsuit). If the legislature had intended to only limit a creditor's ability to bring suits under § 12-1-8, the legislature could have chosen language better tailored to the activity being limited. Instead, the legislature chose a term that includes all activities addressed by the statute.

The legislature also used the word "all" in describing which accounts needed to be within the statute of limitations. The term "all" does not fit within the Defendants' interpretation. The term "all accounts" suggests the existence of multiple accounts, some of which may or may not

abide by the qualifying phrase. However, lawsuits are typically brought upon individual debts, therefore it would be rare for there to be a situation where some of the debts (but not all) fall within the statute of limitations and would fall under the purview of the statute. The more reasonable interpretation of the term "all accounts" is that the qualifier applies to all accounts referenced in the statute, including accounts received or taken by assignment for the purpose of collection.

The last antecedent rule applies if there are no other indicia of alternative meanings. *Barnhart v. Thomas*, 124 S. Ct. 376, 380 (2003). The last antecedent rule does not apply to this statute because its application results in superfluous, redundant, and illogical language. The most logical interpretation, and the one most in tune with the statutes title (Designating and limiting activities as to assignments), is the one where statute effects limitations on collectors and their ability to obtain accounts, namely that the accounts be within the statute of limitations.[1]

Assuming the Court sides with Plaintiff's interpretation, Defendants, as alleged, have violated Utah law. Though Utah Code Ann. § 12-1-8 does not provide a private cause of action, a violation of the statute can be a basis for a FDCPA or UCSPA claim. Defendants were never allowed to purchase Gunther and other time-barred debts and Defendants could not lawfully collect on these debts. The unlawful collection of debts result in a violation of the FDCPA and UCSPA since both bar unfair or deceptive practices, e.g. claiming a right that one does not have.

---

[1] Defendants further argue that Plaintiff's interpretation must be inaccurate because outlawing the sale of debts outside the statute of limitations provides no benefit to the consumer nor would the act harm the debtor. This argument is irrelevant as the section in which the statute is found specifically regards debt collectors, with the particular statute addressing the abilities and limitations of debt assignment. It is Defendants' interpretation that fails to make sense within the statutory frame work, as Defendants' interpretation would result in no limitations on a debt collector's activities (other than the limitation on bringing actions barred by the statute of limitations that governs all parties, debt collectors included) despite the title of the statute: Designating and **Limiting Activities** as to Assignments.

*See e.g. Sclafani v. BC Servs.*, No. 10-61360-CIV, 2010 U.S. Dist. LEXIS 115330 (S.D. Fla. Oct. 18, 2010).

III.   <u>Soliciting for payment of a debt when there is no consideration for the payment is unfair or deceptive.</u>

Defendants letter requested payment from Nicole on a time barred debt. Nowhere in the letter is there any disclosure that under Utah law the payment would be nothing more than a gift to the Defendants because it was not supported by any consideration. The only basis for the Defendants to obtain payment from Nicole on a time barred debt would be a moral obligation to pay the debt. Utah law rejects that a moral obligation provides legal consideration for an agreement to pay a time barred debt. *Manwill v. Oyler*, 11 Utah 2d 433, 435, 361 P.2d 177, 178 (Sup.Ct. 1961) ("The position the plaintiff essays is that the earlier payments he claims to have made for the defendants' benefit placed them under moral obligation to repay him, and that this constitutes valid consideration to make their 1957 oral promise a binding contract. The rule quite generally recognized is that a moral obligation by itself will not do so.").

The Defendants failure to disclose the nature of the request as a gift could be found to be an unfair, deceptive or confusing practice that violates the FDCPA or UCSPA.

IV.   <u>In Utah, payment on a debt that is outside the statute of limitations will restart the statute of limitations on the debt.</u>

One of the bases for alleging the letter sent by MCM is false and misleading and constitutes an unfair or unconscionable means for collecting a debt is the letter fails to warn Gunther and other debtors that payment of an otherwise unenforceable debt can revive the debt and may restart the six-year statute of limitations. Defendants claim payment can only reinstate a debt in Utah if payment is made prior to the expiration of statute of limitations on the debt, therefore the warning is unnecessary, relying on an outlier case by the Utah Court of Appeal

from 1995 and an unpublished decision by the 10th Circuit Court of Appeals wherein the payment issue was not even briefed. The state of Utah law is that partial payment on a debt will resurrect the debt, whether payment occurs prior to or after the statute of limitations has run, therefore Defendants' failure to warn constitutes a legitimate danger to unsophisticated consumers. Utah Code Ann. § 78B-2-113.

Revival of the statute of limitations on a debt is governed by Utah Code § 78B-2-113 (formerly numbered Utah Code § 78-12-44). That section provides that the statute of limitations runs from the later of the date the debt arose, a partial payment on the debt was made, or debtor's acknowledgment of the debt. See Utah Code § 78B- 2-113 ("(1) An action for recovery of a debt may be brought within the applicable statute of limitations from the date: (a) the debt arose; (b) a written acknowledgment of the debt or a promise to pay is made by the debtor; or (c) a payment is made on the debt by the debtor. (2) If a right of action is barred by the provisions of any statute, it shall be unavailable either as a cause of action or ground for defense.").

Prior to the implementation of Utah Code § 78B-2-113 (formerly § 78-12-44), common law in Utah allowed for the extension of the statute of limitations on a debt by written acknowledgement or partial payment, regardless of whether payment or acknowledgment was made before or after the statute of limitations had run. *Attorney Gen. v. Pomeroy*, 93 Utah 426, 477-78, 73 P.2d 1277, 1300 (1937). By 1943, Utah's legislature had enacted Utah Code § 78B-2-113 and amended the statute into a form analogous with its present form. Defendants cite to *State Bank v. Troy Hydro Sys.*, 894 P.2d 1270, 1276 (Utah Ct. App. 1995) as evidence that the statute altered common law, requiring partial payment or written acknowledgement prior to the statute of limitations running for the statute of limitations to run. Though the Court did make such a finding, prior case law and subsequent case law, including case law from the Utah Supreme

Court indicates the *State Bank* ruling is not the proper interpretation of Utah Code § 78B-2-113 (Statute).

The first case to interpret the state of Utah law following the implementation of the Statute was *Beck v. Dutchman Coalition Mines Co.*, 269 P.2d 867 (Utah 1954). In *Beck*, an attorney sought compensation for services rendered some thirty years prior. In interpreting the Statute, the Utah Supreme Court embraced *Elder v. Dyer* out of Kansas, noting that Utah's statute was taken from Kansas. 26 Kan. 604 (1881).[2] Citing *Elder*, the Supreme Court stated "anything that will indicate that the party making the acknowledgement admits that he is still liable on the claim… is sufficient to **revive** the debt. *Beck*, 269 P.2d at 869 (emphasis added). Further citing *Salt Lake Transfer co. v. Shurtliff*, a Utah case decided before the Statute was enacted, the Supreme Court acknowledged ""nothing short of a distinct, direct, unqualified, and intentional admission of a present, subsisting debt on which a party is liable will be sufficient to **take the obligation out of the statute and start it running anew.**" *Id* at 869 -870 (emphasis added).

In 1961, the Utah Supreme Court returned to interpreting the Statute in *Manwill v. Oyler*, regarding whether an oral acknowledgement of an obligation can continue the statute of limitations on a debt pursuant to Statute. 361 P.2d 177 (UT 1961). Discussing oral acknowledgements in relation to the Statute, the Supreme Court found "[t]his affirmative provision [Statute], **which has the effect of permitting an outlawed obligation to be renewed**

---

[2] Utah Code § 78B-2-113 is derived from a Kansas' statute. Kansas has interpreted its statute as reviving a statute of limitations regardless of whether payment is made prior to or after the statute of limitations has run. *Jarnagin v. Ditus*, 198 Kan. 413, 418, 424 P.2d 265, 270 (1967). Oklahoma's own statute (12 Okl. St. § 101-2) is identical to Utah Code § 78B-2-113 and Wyoming has also interpreted its statute as applicable prior to or after the statute of limitations has run on a debt. *First Nat'l Bank v. Wright*, 192 Okla. 182 (Okla. 1943).

**by a promise in writing**, indicates an awareness and recognition of the well-established principle that an oral promise will not revive such an obligation." *Id* at 179 (emphasis added). Here the Utah Supreme Court went out of its way to affirm that Statute has the effect of renewing an obligation even if it is outside the statute of limitations.

In *State Bank*, the Utah Court of Appeals determined the statute could not renew the statute of limitations once it had run, but could only be suspended. *State Bank v. Troy Hydro Sys.*, 4 P.2d 1270, 1276 (Utah Ct. App. 1995). The Utah Court of Appeals cited to *Yergensen v. Ford* in support. 402 P.2d 696, 697 (Sup.Ct. 1965) in support of its finding. In *Yergensen*, the Utah Supreme Court did not address the question of whether the Statute applies after the statute of limitations had run, but the Court of Appeals chose to dramatically reinterpret the state of Utah's law based solely upon the Supreme Court's use of the term "suspended" while discussing the Statute. *State Bank*, 894 P.2d at 1276. ("The *Yergensen* court concluded that "a reasonable interpretation of the last sentence . . . would compel the conclusion that any statute which bars a right of action is conclusive unless its operation is suspended by the specific provisions of [section] 78-12-44.") *Yergensen*, 402 P.2d at 399. ("a reasonable interpretation of the last sentence of this statute would compel the conclusion that any statute which bars a right of action is conclusive unless its operation is suspended by the specific provisions of 78-12-44."). The Utah Court of Appeals did not address *Beck* nor *Manwill*, and *State Bank* has not been subsequently cited in Utah as authority that Statute does not apply where payments are made after the statute of limitations has run. It is an outlier case.

After *State Bank*, the Utah Court of Appeals reconsidered its stance on the application of Statute in *Wells Fargo Bank, N.A. v. Temple View Invs.* 82 P.3d 655 (Utah App. Ct. 2003). In discussing the Statute, the Court of Appeals found:

The Utah Supreme court has interpreted section 78-12-44 to mean that <u>in order to file an action outside the statute of limitations, based on a new acknowledgement,</u> the written acknowledgement must be clear, distinct, direct, unqualified, and intentional.

*Id* at 658 (emphasis added). The Court of Appeals cited to *Salt Lake Transfer v. Shurtliff* and *Beck v. Dutchman Coalition Mins Co.* in its finding, both cases that acknowledge a debt that has fallen outside the statute of limitations can be revived by through the Statute by a partial payment. *Id.* The majority of Utah caselaw, and all cases from the Utah Supreme Court, agree that Utah Code Ann § 78B-2-113  can revive a debt once outside the statute of limitations.

Defendant further cites to *McGrath v. Fogarty*, an unpublished case out of the Tenth Circuit that embraces *State Bank's* limitation on Statute's application. As an unpublished case, the case is not binding on this Court but has persuasive value. McGrath's persuasiveness is limited because the limiting interpretation of the Statute was not an issue briefed by the parties *see* Exhibits 1 (Appellate Briefing in *McGrath v. Fogarty*). The *State Bank* case was not even included in the briefing. The Court should reconsider the McGrath based on the briefing presented by the parties which overwhelmingly supports the conclusion that Statute can revive a debt, even after the obligation is outside the statute of limitations.

V.    <u>Defendants' dunning letter violates the FDCPA and the UCSPA because it misrepresents that payment on an unenforceable debt can save the consumer money and fails to warns consumer that payment can waive the statute of limitations bar.</u>

The FDCPA and the UCSPA both proscribe specific debt collection practices, including false, deceptive, or misleading representations, and unfair or unconscionable collection methods. 15 U.S.C.A § 1692(d),(e). Defendants' dunning letter violates these statutes by (1) misrepresenting to the consumer that payment on a debt that is no longer enforceable will save them money; and (2)failing to warn consumers that partial payment on the debt can waive the statute of limitations bar to Defendants collecting the debt.

To help ensure the most complete protection possible, determinations as to whether conduct violates the Act are made in keeping with the standard of the "least sophisticated consumer". *Jeter v. Crdit Bureau, Inc.*, 760 F.2d 1168, 1172-75, 1179 (11th Cir. 1985). In Applying the law to this case, the court must decide whether Defendants were unfair or unconscionable, or whether the least sophisticated of consumers would have been deceived or misled by this practice. *Id*.

Defendants argue the dunning letter does not violate the consumer protections on debt collection because the letter alerted the consumer that debt was time-barred and Defendant never threatened to pursue litigation, as if meeting these two requirements give debt collectors free rein to pursue any other practice in pursuing unenforceable debts. However, even without the threat of litigation, collection efforts on time-barred debts "offer opportunities for mischief and deception". *Pantoja v. Portfolio Recovery Associates, LLC*, 852 F.3d 679, 684 (7th Cir. 2017). Even where debt collectors did not make threats of litigation, courts have still found collection practices in violation of the Act. *See e.g. McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1020 (7th Cir. 2014) (dunning letters offering to "settle" time-barred debts could violate Act by leading debtors to believe debts were legally enforceable); *Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507, 509 (5th Cir. 2016) (effort to collect is not automatically unlawful, but letter violates FDCPA if it could lead unsophisticated consumer to believe her time-barred debt is legally enforceable); and *Buchanan v. Northland Group, Inc.*, 776 F.3d 393, 397 (6th Cir. 2015) (offer to settle time-barred debt could violate Act by failing to disclose that suit would be time-barred or that partial payment would remove statute of limitations bar). Simply alerting Gunther that her debt was time-barred (a fact in dispute) and omitting threats of litigation does not mean Defendants' letter could not violate the Acts.

A. *Defendants' representation that payment will save the consumer money is likely to deceive or mislead the least sophisticated of consumers.*

Defendants send dunning letters to consumers whose debt is no longer within the statute of limitations. The letter proceeds to offer three payment options presented by "a discount program designed to save [the consumer] money." The consumer is then encouraged to "[a]ct now to maximize your savings and put this debt behind you." Defendants are alleged to be in the business of purchasing debt that is no longer enforceable. The representation that payment on an unenforceable debt can possibly save a consumer money is patently false and violates the FDCPA and UCSPA. Furthermore, such a suggestion could lead an unsophisticated consumer to believe that the time barred debt is legally enforceable. Both representations would violate the Acts.

The first deceptive representation is that Gunther can save money by making a payment towards her Target Account. At the time of the dunning letter, the Target Account obligation was time-barred. Utah Code Ann. § 78B-2-113 provides that an action for recovery of a debt must be brought within the statute of limitations, and that if a debt is barred by the statute of limitations, it is unavailable as a cause of action. Gunther's debt was outside the statute of limitations, therefore Gunther had no legal obligation to make a payment on the debt.

Furthermore, Utah has already determined that a moral obligation to pay a debt is not sufficient consideration for payment. *Manwill v. Oyler*, 11 Utah 2d 433, 435, 361 P.2d 177, 178 (Sup.Ct. 1961) ("The position the plaintiff essays is that the earlier payments he claims to have made for the defendants' benefit placed them under moral obligation to repay him, and that this constitutes valid consideration to make their 1957 oral promise a binding contract. The rule quite generally recognized is that a moral obligation by itself will not do so.").

Gunther had no legal obligation to make a payment on the debt and she had no moral obligation justifying a payment, therefore Gunther had no need to pay anything towards the Target Account at the time Defendants sent their dunning letter. Yet, Defendants represented that by making a one-time payment of 195.38, or 3 monthly payments of $86.83, or monthly payments as low as $50 per month, Gunther could save money - which is simply not true. Any payment Gunther would have made to Defendants would have been a gift without consideration to Defendants. *See e.g. McMahon*, 744 3.d at 1015.

"A representation is deceptive "if it has the mere 'tendency or capacity to deceive' the least sophisticated of consumers'" *Kimber v. Federal Financial Corp*., 668 F. Supp. 1480, 1489 (1987). "[L]aw was not 'made for the protection of experts, but for the public – that vast multitude which includes the ignorant, the unthinking, and the credulous; and the 'fact that a false statement may be obvious." *Id*. By claiming payment would save money, the representation met the standard of "mere tendency to deceive". Accordingly, Defendants' letter violates the Acts.

    B. *Defendants' failure to warn consumers that partial payment or entering a payment plan on the time-barred debt constitutes a violation of the Acts.*

.    Defendants' letter is deceptive because it does not tell Gunther that making a partial payment or entering into a payment plan on a time-barred debt can waive her statute of limitations defense. The formative case on this area of deception is *Pantoja v. Portfolio Recovery Associates*, LLC, 78 F.Supp.3d 743 (2015), aff'd *Pantoja v. Portfolio Recovery Associates*, 852 F.3d 679 (2017). In *Pantoja*, Portfolio Recovery Associates (another debt collector engaged in the same business as Defendants of purchasing time-barred debts) sent dunning letters to consumers in Illinois asking for "settlement offers" similar to those offered by Defendants to Gunther. *Id* at 682. In Illinois, as in Utah, partial payment on a time-barred debt can restart the

statute of limitations. [3] *Id* at 685. Or by entering into a payment plan, the consumer may give rise to a new obligation to pay Defendants. *Id*. Defendants' failure to warn consumers regarding the possible waiver of the statute of limitations defense constituted a violation of the Acts. *Id* at 863.

In making their rulings, the District Court and the affirming 7th Circuit Court began with the assumption that "a consumer, sophisticated or otherwise, [would not] likely know that a partial payment would reset the limitations" and "only the rarest consumer-debtor will recognize [the] danger" of partial payment. *Pantoja*, 78 F.Supp at 746, *Pantoja*, 852 F.3d at 684. Despite this lack of general awareness by the public, statutes of limitations are considered fundamental to a well-ordered and fair judicial system, and there is "a strong public policy… that it is *unjust* to fail to put the adversary on notice to defend within a specified time period". *United States v. Kubrick*, 444 U.S. 100 S.Ct. 352, 356-357 (1979). This policy overrides the right to prosecute claims in favor of the right to be free of unenforceable claims. *Id*. The courts found the risk of losing the ironclad statute of limitations defense to be significant, and silence about the risk to be misleading and deceptive. *Pantoja*, 852 F.3d at 685.

Portfolio Recovery Associates (PRA) argued, as Defendants are likely to mirror, that language in the letter suggesting settlement of the account for good show that there was no danger to the deception because the debt would be extinguished. *Id*. The 7th Circuit was

---

[3] Similar to the dispute on the applicability of Utah Code Ann. § 78B-2-113 after the statute of limitations has run, the 7th Circuit also addressed a dispute regarding the precise scope of Illinois law restarting the statute of limitations. The 7th Circuit found that whatever the scope of Illinois law, partial payment puts the plaintiff in a much worse legal position than he would have been before taking the step. *Pantoja*, 852 F.3d at 685. The 7th Circuit explained: "Before he received defendant's letter, he had an absolute defense to any possible collection suit… If he had made… a partial payment he could have been sued… In such a suit, at best, he would have had to challenge the collector's reliance on Illinois statutes". Similarly, the applicability of Utah Code Ann. § 78B-2-113, whether interpreted in Defendants' favor or not, is not dispositive because, regardless of whether the statute of limitations is revived, Nichole would have been put in a worse legal position and forced to challenge Utah law if sued.

unpersuaded. Even assuming PRA could not have tried to revive the underlying debt, the relevant danger is that the "an unsophisticated consumer debtor who makes the first payment… is much worse off than he would be without taking the step". *Id*.

"[T]he FDCPA prohibits a debt collector from luring debtors away from the shelter of the statute of limitations without providing an unambiguous warning that an unsophisticated would understand. *Id*. The language needs to "be clear, accessible, and unambiguous to the unsophisticated consumer". *Id* at 686. Defendants did not provide any warning regarding the danger of making a payment as to the risk of losing an iron clad defense, therefore the letter is misleading and deceptive as a matter of law.

## CONCLUSION

Gunther respectfully requests the Court deny Defendants' Motion to Dismiss. Defendants engaged in false representations and deceptive practices when Defendants sent a letter representing that payment on a time-barred will save Gunther money and failed to warn Gunther regarding the loss of her ironclad defense to suit if payment is made. These practices are misleading and deceptive as a matter of law and violated the FDCPA and UCSPA.

DATED this 5th day of September, 2017.

AYRES LAW FIRM

/s/ Daniel Baczynski
Attorneys for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 5th day of September, 2017, I caused a true and correct copy of
**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** to be served
through the Court's E-Filing System as follows:

Thomas D. Leland
Thomas.Leland@hklaw.com
Utah Bar No. 15953
Attorney for Defendants Midland Credit Management and Midland Funding, LLC
Holland Knight LLP
1801 California Street, Suite 5000 Denver, CO 80202
Telephone: 303.974.6660


                                                    /s/ Daniel Baczynski