IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| NICOLE K. GUNTHER, on behalf of herself and the proposed Class,<br><br>Plaintiff,<br><br>v.<br><br>MIDLAND CREDIT MANAGEMENT, INC. and MIDLAND FUNDING, LLC,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING IN PART, AND DENYING IN PART, DEFENDANTS' MOTION TO DISMISS COMPLAINT<br><br>Case No. 2:17-cv-704<br><br>Judge Clark Waddoups |

## INTRODUCTION

This matter arises under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (FDCPA) and comes before the court through Defendants Midland Credit Management, Inc's (Midland Credit) and Midland Funding, LLC's (Midland Funding) Motion to Dismiss Plaintiff Nicole Gunther's (Ms. Gunther) Complaint.[1] (ECF No. 11.) The court heard oral argument on the motions on February 14, 2018, taking the matter under advisement. After carefully considering the parties' briefs and oral arguments, the court GRANTS in part, and DENIES in part, Midland's Motion to Dismiss.

## RELEVANT FACTS

"[Ms.] Gunther . . . acquired a Target National Bank account." (Compl. ¶ 13, ECF No. 2-1 at 3.) "[Ms.] Gunther made purchases on the Target National Bank account, resulting in an outstanding balance." (Compl. ¶ 14, ECF No. 2-1 at 3.) "At some point after the . . . debt was in default, Target National Bank . . . transferred Gunther's account to Midland Funding." (Compl. ¶

---

[1] The court will refer to Defendants collectively as "Midland."

17, ECF No. 2-1 at 3.) Midland Funding acquired this debt after the statute of limitations had expired. (*See* Compl. ¶ 26, ECF No. 2-1 at 4.) "After acquiring [Ms. Gunther's] debt[], Midland Funding then attempt[ed] to collect the purchased [time-barred] debt[] . . . through . . . Midland Credit," a collection agency. (*See* Compl. ¶¶ 19–20, ECF No. 2-1 at 3.) Midland Credit began collection efforts by "sen[ding] Gunther a collection letter."[2] (Compl. ¶ 21, ECF No. 2-1 at 4.)

Near the top of the letter, in a black box, are the words "CHOOSE THE OPTION THAT WORKS FOR YOU," written in white ink. (Compl. Ex. A ECF No. 2-2) (emphasis in original). Immediately below this box, the letter informs the reader that the correspondence is regarding "Target National Bank." (ECF No. 2-2.) The letter then addresses Ms. Gunther:

Dear Nichole,

Congratulations! You have been **pre-approved** for a discount program designed to save you money. Act now to maximize your savings and put this debt behind you by calling (877) 434-3697. Pay online today at www.midlandcreditonline.com.

(ECF No. 2-2) (emphasis in original). The letter then presents three boxes, containing three "options." (ECF No. 2-2.) Option 1 offers "40% OFF" the advertised balance and contains the words "You Pay Only $195.38;" Option 2 offers "20% OFF" if Ms. Gunther were to elect to make "3 Monthly Payments of Only $86.83;" and Option 3 offers Ms. Gunther to make "Monthly Payments As Low As" "$50 per month," and invites Ms. Gunther to call Midland "to discuss [her] options and get more details." (ECF No. 2-2.) Below these three boxes are the words "[if] these options don't work for you, call one of our Account Managers to help you set up a payment plan that does." (ECF No. 2-2.) To the right of these three boxes is another box that provides: "Benefits of Paying . . . [s]ave up to $130.25." (ECF No. 2-2.) Finally, at the bottom of the letter is a disclosure that provides:

---

[2] The letter Ms. Gunther received is a "form letter" that "Midland Credit uses as the initial letter it sends to consumers on behalf of Midland Funding." (Compl. ¶ 25, ECF No. 2-1 at 4).

> The law limits how long you can be sued on a debt and how long a debt can appear on your credit report. Due to the age of this debt, we will not sue for it or report payment or non-payment of it to a bureau.

(ECF No. 2-2.)

Ms. Gunther, in her first claim for relief, alleges that Midland violated the Fair Debt Collection Practices Act (FDCPA) in two different ways. First, she alleges that Midland "engaged in unfair and deceptive acts and practices in violation of" 15 U.S.C. §§ 1692e-f, "by taking assignments of time barred debt for collection in violation of Utah law."[3] (Compl. ¶ 38, ECF No. 2-1 at 6.) Ms. Gunther's position is that "[u]nder Utah law collectors such as [Midland] may only take assignments of debts for collections if the debt is not time barred. See UT ST § 12-1-8[.]" (Compl. ¶ 26, ECF No. 2-1 at 4.) In support, Ms. Gunther cites the Utah Collection Agencies Act (UCAA).[4] Ms. Gunther alleges that "Defendants took an assignment of Gunther's alleged debt [after] it was time barred." (Compl. ¶ 26, ECF No. 2-1 at 4.) It appears that Ms. Gunther is arguing that a violation of the UCAA results in a violation of the FDCPA. Second, she alleges that Midland "engaged in unfair and deceptive acts and practices" in violation of 15 U.S.C. §§ 1692e-f by sending letters, which attempt to settle time-barred debts, without

---

[3] The elements of a claim under 15 U.S.C. §§ 1692e require the plaintiff to show:

> (i) that [s]he is a 'consumer' protected under the FDCPA; (ii) that [the defendant] was a 'debt collector' under that Act; (iii) that [the defendant] was engaged in the "collection of a debt"; and (iv) that [the defendant] used false, deceptive, or misleading representations in connection with those collection efforts."

*Vester v. Asset Acceptance, L.L.C.*, No. CIV.A08CV01957MSKLTM, 2009 WL 2940218, at *4 (D. Colo. Sept. 9, 2009). "The elements of a § 1692f claim would be similar to those listed above, except that the final element would require the [p]laintiff to show that[the defendant] used 'unfair or unconscionable methods' to collect the debt." *Id.*

[4] Utah Code § 12-1-8 provides, in relevant part:

> Any collector having complied with the provisions of this chapter, may receive accounts, bills or other indebtedness, take assignments for the purpose of collections, and at the direction of the assignor bring suit as assignee, provided however, that all accounts shall be within the statute of limitations as provided by law.

sufficiently disclosing that the debts are time-barred and by suggesting that payment on the time-barred debt will save the consumer money. (*See* Compl. ¶ 38, ECF No. 2-1 at 6); (ECF No. 15 at 17) ("Defendants' dunning letter violates these statutes by . . . misrepresenting to the consumer that payment on a debt that is no longer enforceable will save them money."))

Turning to the Complaint's second claim for relief, Ms. Gunther alleges that Midland violated the Utah Consumer Sales Practice Act (UCSPA) by engaging in deceptive practices. (Compl. ¶¶ 43-44, ECF No. 2-1 at 7-8.) Ms. Gunther appears to allege that Midland violated the UCSPA in two different ways. First, she appears to allege that Midland engaged in deceptive practices when Midland demanded payment from Ms. Gunther on "debts not legally assigned to them." (Compl. ¶ 44, ECF No. 2-1 at 7.) Second, she appears to allege that Midland engaged in deceptive practices by "failing to disclose that a voluntary payment may revive or toll the statute of limitations." (Compl. ¶ 44, ECF No. 2-1 at 7.)

## PROCEDURAL HISTORY

Ms. Gunther commenced this action on May 24, 2017 by filing a proposed Class Action Complaint in state court. (ECF No. 2-1 at 11.) Midland then filed notice of removal on June 28, 2017, based on federal question jurisdiction. (ECF No. 2.) The case was assigned to this court on that date.

In her Complaint, Ms. Gunther alleges under the FDCPA that she is a "consumer,"[5] that both Midland Funding and Midland credit are "debt collectors,"[6] that Defendants were engaged

---

[5] "The term 'consumer' means any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). Ms. Gunther has alleged that she "made purchases on the Target National Bank account resulting in an outstanding balance;" (Compl. ¶ 14, ECF No. 2-1 at 3); that "after the alleged debt was in default," Midland acquired this debt;" (*See* Compl. ¶ 17, ECF No. 2-1 at 3); and that Midland sent her a letter seeking payment on this debt. (*See* Compl. ¶ 22, ECF No. 2-1 at 3). Ms. Gunther has sufficiently alleged that she was a "consumer."

[6] "The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, *or* who regularly collects or attempts to

in the collection of debt, and that Midland used deceptive representations in connection with those collection efforts. Ms. Gunther seeks statutory and actual damages under the FDCPA, attorney's fees, litigation expenses, cost of suit, Certification of "the FDCPA Class," and her appointment as the class representative. (Compl. ¶60, ECF No. 2-1 at 10–11.) Ms. Gunther also seeks Certification of "the Utah Class," her appointment as the Utah Class's representative, and "declaratory and injunctive relief against Defendants to stop Defendants from harming consumers and providing them with an unfair advantage over its competitors by engaging in collection efforts for debt not legally owed to it; including a preliminary and permanent injunction." (Compl. ¶60, ECF No. 2-1 at 10–11.)

On July 31, 2017, Midland filed the Motion to Dismiss Plaintiff's Complaint. (ECF No. 11.) On September 5, 2017, Ms. Gunther filed an opposition, (ECF No. 15) and on October 3, 2017, Midland filed a reply. (ECF No. 19.) The court heard oral argument on the motions on February 14, 2018. (ECF No. 27.)

---

collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (emphasis added).

Ms. Gunther has alleged that both Defendants are "debt collectors." (Compl. ¶¶ 7,9 ECF No. 2-1 at 2.) Defendants cite *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1721 (2017) in a footnote for the proposition that "[t]he FDCPA only applies to debt collectors that are engaged in collecting the debts of *others*, not their own debts," and argues that "Midland funding—as the owner of the debt—cannot possibly be liable under the FDCPA in this case." (ECF No. 11 at 9 n. 3.) Plaintiff argues that "Defendants' exclusive reliance on *Henson* is . . . unavailing" because "Defendants do not address the dispositive issue—that Congress chose to subject it to FDCPA coverage under the first prong of the § 1692(a) . . . ." (ECF No. 15 at 4.) Plaintiff points out that the Supreme Court's holding in *Henson* only dealt with one of the two definitions of the term "debt collector" under 15 U.S.C. § 1692a(6). (*See* ECF No. 15 at 4.) Defendants' reply to Plaintiff's argument is that "Plaintiff's Complaint simply fails to assert that Midland Funding's primary purpose is debt collection." (ECF No. 19 at 2.) But in the Complaint, Plaintiff did allege that "Midland Funding's business is to acquire debts in default and then pursue collection of the debts . . . ." (Compl. ¶ 6, ECF No. 2-1 at 2.) The court finds that, at this stage of the proceedings, Plaintiff has sufficiently alleged that both Defendants are debt collectors.

5

## ANALYSIS

### I. Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure governs motions to dismiss for failure to state a claim for which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In reviewing a 12(b)(6) motion, the court "accept[s] as true all well-pleaded factual allegations in a complaint and view[s] these allegations in the light most favorable to the plaintiff." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). Ultimately, the issue "is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support [the plaintiff's] claims." *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005) (citations omitted) (internal quotation marks omitted).

### II. FDCPA

Congress enacted the FDCPA in 1977 due to "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692(a). The purpose of the FDCPA was "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Because the FDCPA is considered to be a remedial statute, "it should be construed liberally in favor of the consumer." *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002).

Relevant here, the Act prohibits using "any false, deceptive, or misleading representations or means" in connection with the collection of a debt, 15 U.S.C. § 1692e, and any "unfair or unconscionable means" to collect or attempt to collect a debt. 15 U.S.C. § 1692f. Each of these provisions provides a non-exhaustive list of potential violations. Misleading representations under section 1692e include: "[t]he false representation of the character, amount, or legal status of any debt," 15 U.S.C. § 1692e(2)(A); "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken," 15 U.S.C. § 1692e(5); and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10).

When analyzing a claim under the FDCPA, the "overwhelming majority of Courts of Appeals" have applied some form of the "least sophisticated consumer." *See Jensen v. Pressler & Pressler*, 791 F.3d 413, 419 n.3 (3d Cir. 2015). "The Tenth Circuit appears to have never explicitly embraced—but certainly never disclaimed—the standard." *Id*. In an unpublished decision, the Tenth Circuit recognized that other circuits apply an objective standard when analyzing FDCPA claims, "measured by how the 'least sophisticated consumer' would interpret the notice from the debt collector."*Ferree v. Marianos*, No. 97-6061, 1997 WL 687693, at *1 (10th Cir. Nov. 3, 1997) (citation omitted); *see also Fouts v. Express Recovery Servs., Inc.*, 602 F. App'x 417, 421 (10th Cir. 2015) (applying the "least sophisticated consumer" standard). Based on this guidance from the Tenth Circuit, the court applies the least sophisticated consumer standard to Ms. Gunther's claims. The inquiry under the standard is "how the least sophisticated consumer—one not having the astuteness of a [lawyer] or even the sophistication of the average, everyday, common consumer—understands the notice . . . she receives." *Ferree,* 129 F.3d at *1 (quoting *Russell v. Equifax A.R.S.,* 74 F.3d 30, 34 (2d Cir.1996)). "The basic purpose of the

least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993).

### A. Collection of Time-Barred Debts Under the FDCPA (First Claim)

As noted above, Ms. Gunther, in her first claim for relief, alleges that Midland violated the FDCPA in two different ways—(1) by taking assignments of time-barred debt for collection in violation of Utah law and (2) by sending dunning letters that attempt to settle time-barred debs without sufficiently disclosing that the debts are time barred, and by suggesting that payment on the time-barred debt will save the letter's recipient money.

#### 1. A Violation of the UCAA Does Not Provide a Basis for a FDCPA Claim

The court dismisses Ms. Gunther's first allegation of her first claim because the law does not afford her any relief for Midland's purported violations of the UCAA. "Dismissal is appropriate if the law simply affords no relief." *Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1202 (10th Cir. 2011).

Ms. Gunther's position is that "[u]nder Utah law collectors such as [Midland] may only take assignments of debts for collections if the debt is not time barred . . . ." (Compl. ¶ 26, ECF No. 2-1 at 4.) And she alleges that "[t]he Defendants took an assignment of Gunther's alleged debt when it was time barred." (Compl. ¶ 26, ECF No. 2-1 at 4.) Ms. Gunther argues that "[t]he unlawful collection of debts [under the UCAA] result[s] in a violation of the FDCPA and the UCSPA since both bar unfair or deceptive practices . . . ." (Plaintiff's Opposition to Motion to Dismiss ECF No. 15 at 12.) But this court has previously rejected a nearly identical argument in *Muscato v. Northland Grp., Inc.*, No. 1:13-CV-00042-CW, 2015 WL 12600165, at *6 (D. Utah Jan. 30, 2015).

In *Muscato*, the plaintiff argued in his Motion for Summary Judgment that "[d]efendant's violation of [the UCAA] is a clear violation of the FDCPA." (*Muscato*, Case No. 1:13-CV-0042, ECF 22 at 18.) The plaintiff in *Muscato* reasoned that "[h]ad the Defendant complied with [the UCAA] . . . it would not have taken assignment of the account and would not have been permitted to make any collection attempt towards Plaintiff . . . ." (*Muscato*, Case No. 1:13-CV-0042, ECF 22 at 18.) The plaintiff argued that "[f]or this reason . . . Defendant made a 'false, deceptive, or misleading representation'" and violated the FDCPA. (*Muscato*, Case No. 1:13-CV-0042, ECF 22 at 18-19.)

But this court rejected that argument, noting that the "the UCAA does not provide a private cause of action on the part of consumers to enforce its terms. Rather, the UCAA provides for criminal penalties." *Muscato* 2015 WL 12600165 at *6. And the court further noted that "[u]nder Utah's 'long-standing approach to statutory interpretation,' courts are not permitted to create a private right of action 'when a statute makes certain acts unlawful and provides criminal penalties for such acts, but does not specifically provide for a private right of action.'" *Id*. (citing *Puttuck v. Gendron*, 2008 UT App 362, ¶ 18, 199 P.3d 971, 978). This court declined to create a private right of action "where a Utah state court has not already interpreted such a statute to provide for a right of action." *Id*.

Ms. Gunther's first allegation of her first claim fails because, just as in *Muscato*, the court cannot transform a (purported) violation of the UCCA into a private right of action under the FDCPA. In other words, even if Midland violated the UCAA, "the law simply affords [Ms. Gunther] no relief." *Commonwealth Property*, 680 F.3d at 1202.

The court therefore GRANTS Midland's 12(b)(6) Motion as it relates to Ms. Gunther's first allegation of her first claim.

2. It Is Plausible that the Letter Is Misleading

In the Complaint, Ms. Gunther argues that "Defendants engaged in unfair and deceptive acts and practices" in violation of 15 U.S.C. §§ 1692e-f "by dunning consumers on time-barred debts without disclosure of that fact." (Compl. ¶ 38, ECF No. 2-1 at 6.) In her Opposition to Defendants' Motion to Dismiss, Ms. Gunther provides further clarity to her position. Ms. Gunther argues that "Defendants' dunning letter violates [the FDCPA] by . . . misrepresenting to the consumer that payment on a debt that is no longer enforceable will save them money." (ECF No. 15 at 17.) Ms. Gunther argues that this representation "is likely to deceive or mislead the least sophisticated of consumers." (ECF No. 15 at 19.) Defendants, on the other hand, argue that "Utah district courts have generally found that a violation of the FDCPA only occurs with respect to an attempt to collect on a time-barred debt where a defendant files suit or threaten[s] to file suit, which Defendants have not done here." (ECF No. 11 at 8.) In response, Plaintiff argues that "[s]imply alerting [Plaintiff] that her debt was time-barred (a fact in dispute) and omitting threats of litigation does not mean Defendants' letter could not violate the [FDCPA]." (ECF No. 15 at 18.)

In support of her position, Plaintiff cites cases from the Fifth, Sixth, and Seventh Circuits. (*See* ECF No. 15 at 18.) One of the cases Plaintiff cites is *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014). That case provides that "[t]he proposition that a debt collector violates the FDCPA when it misleads an unsophisticated consumer to believe a time-barred debt is legally enforceable, *regardless of whether litigation is threatened*, is straightforward under the statute." *McMahon*, 744 F.3d at 1020 (emphasis added). Defendants respond by arguing that Plaintiff's cited authority is "irrelevant" because the "the dunning letters [at issue in Plaintiff's cited authorities] failed to state that the law limits how long a consumer can be sued and that the

collector would not sue because of its age"—unlike "the letter at issue," which "explicitly made those disclosures." (ECF No. 19 at 5.) In support of their argument, Defendants cite to two "cases from this very District" that "hold that there is no FDCPA . . . claim where a defendant attempts to collect on a time-barred debt, so long as the collector does not threaten to sue." (ECF No. 19 at 5 *citing Reed v. AFNI, Inc.*, No. 2:09-CV-459 TS, 2011 WL 112430, at *2 (D. Utah Jan. 13, 2011) and *Muscato v. Northland Grp., Inc.*, No. 1:13-CV-00042-CW, 2015 WL 12600165, at *6 (D. Utah Jan. 30, 2015)).

The parties' arguments present two issues for the court: (a) whether a debt-collector can violate the FDCPA if it does not threaten litigation, and (b) whether the letter in this case is plausibly misleading to the least sophisticated consumer.

a. <u>A Debt-Collector Can Violate the FDCPA Without Threatening Litigation</u>

In *Muscato* the plaintiff "argue[d] that sending [a] letter attempting to collect on a debt that [was] outside the statute of limitations applicable for commencing litigation on a written obligation was an 'action that [could not be] legally be taken or that [was] not intended to be taken' and [was] thus a violation of the FDCPA." *Muscato v. Northland Grp., Inc.*, No. 1:13-CV-00042-CW, 2015 WL 12600165, at *6 (D. Utah Jan. 30, 2015). This court concluded that there was no FDCPA violation. *See id*. In reaching this conclusion, this court relied on *Reed v. AFNI, Inc.*, No. 2:09-CV-459 TS, 2011 WL 112430, at *2 (D. Utah Jan. 13, 2011).

In *Reed,* the court provided: "[a]s numerous cases provide, a debt collector is permitted to collect on a debt after the statute of limitations has expired, provided that those efforts do not include the threat or actual filing of a lawsuit." *Reed*, 2011 WL 112430 at *2. The primary case *Reed* relied on is from the Eighth Circuit—*Freyermuth v. Credit Bureau Servs., Inc.,* 248 F .3d 767, 771 (8th Cir.2001). *Reed* cited *Freyermuth* for the proposition that, "in the absence of a

11

threat of litigation or actual litigation, no violation of the FDCPA has occurred when a debt collector attempts to collect on a potentially time-barred debt that is otherwise valid." *Reed*, 2011 WL 112430, at *2, n.14 (quoting *Freyermuth* 248 F. 3d 771). Following those decisions, "[f]ederal courts [have become] divided on whether efforts to collect an unenforceable debt, if unaccompanied by a threat of litigation, violate the FDCPA." *White v. First Step Grp. LLC*, No. 216CV02439KJMGGH, 2017 WL 4181121, at *6 (E.D. Cal. Sept. 20, 2017).

"The Third and Eighth Circuits have stated that 'in the absence of a threat of litigation or actual litigation, no violation of the FDCPA has occurred when a debt collector attempts to collect on a potentially time-barred debt that is otherwise valid.'" *Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507, 511 (5th Cir. 2016) (citing *Freyermuth* 248 F.3d at 771; *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 33 (3d Cir. 2011)). More recently, "[o]n the other hand, the Sixth and Seventh Circuits have held that collection letters offering to settle time-barred debts without disclosing the status of the debt can be misleading and therefore violate the FDCPA even if they do not expressly threaten litigation." *Id*. (citing *Buchanan v. Northland Grp., Inc.*, 776 F.3d 393, 397 (6th Cir. 2015); *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1020 (7th Cir. 2014)). The Fifth Circuit "agree[s] that a collection letter seeking payment on a time-barred debt (without disclosing its unenforceability) but offering a 'settlement' and inviting partial payment (without disclosing the possible pitfalls) [can] constitute a violation of the FDCPA." *Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507, 513 (5th Cir. 2016).

The parties have pointed the court to no Tenth Circuit authority addressing whether, in the absence of a threat of litigation, a debt collector can violate the FDCPA. And the court has not identified any such authority in its own research. Given the recent trend among the circuits identified above, this court now departs from its earlier reasoning in *Muscato* that relied on *Reed*

and the Eighth Circuit's position that no violation of the FDCPA can occur absent a threat of litigation.[7]

    b. <u>The Letter is Plausibly Misleading to the Least Sophisticated Consumer</u>

Having concluded that a debt-collector can violate the FDCPA without threatening litigation, the court must now determine whether the letter at issue is plausibly misleading to the least sophisticated consumer. The question for the court is whether a collection letter that—(1) seeks payment on a time-barred debt; (2) provides that the collector "will" not sue, as opposed to "cannot" sue; and (3) invites partial payments "designed to save" the letter's recipient money—is plausibly misleading to the least sophisticated consumer. As explained in more detail below, the court concludes that it is plausible that the letter is misleading for two reasons.

First, the letter's offer to save the reader money could, by itself, mislead the least sophisticated consumer. The letter provides: "Congratulations! You have been **pre-approved** for a discount program designed to save you money. Act now to maximize your savings and put this debt behind you . . . ." (ECF No. 2-2) (emphasis in original). Ms. Gunther argues that "[t]he representation that payment on an unenforceable debt can possibly save a consumer money is patently false and violates the FDCPA . . . ." (ECF No. 15 at 19.) Ms. Gunther further argues that the letter's offer that "[Ms.] Gunther could save money" "is simply not true." (ECF No. 15 at 20.) The court agrees that it is not true that accepting the letter's offer would have saved Ms. Gunther money. The letter's offer of a "discount program designed to save [the reader] money," considered alone, could therefore plausibly mislead the least sophisticated consumer and could

---

[7] The court departs from *Muscato* in so far as it relied on *Reed* and the Eighth Circuit's decision in *Freyermuth*. But the court does not depart in any way from *Muscato's* conclusion that a violation of the UCAA does not provide a basis for a FDCPA claim.

constitute a "false representation or deceptive means [of] . . . attempt[ing] to collect [a] debt" that would violate 15 U.S.C. § 1692e(10).

Second, the letter's language providing "we will not sue" instead of "cannot sue," when considered together with the letter's offer to save Ms. Gunther money, is also plausibly misleading. Ms. Gunther argues that the letter's suggestion that making a payment could save the letter's recipient money "could lead an unsophisticated consumer to believe that the time barred debt is legally enforceable." (ECF No. 15 at 19.) In contrast, Defendants argue that "the explicit language of the Letter itself discloses that the debt is time-barred." (ECF No. 11 at 8.) The letter's conclusion provides:

> The law limits how long you can be sued on a debt and how long a debt can appear on your credit report. Due to the age of this debt, we will not sue for it or report payment or non-payment of it to a bureau.

(ECF No. 2-2.) The question for the court is therefore twofold—whether the letter's offer to save money could lead an unsophisticated consumer to believe that the time-barred debt is legally enforceable, and if so, whether the letter's conclusion, promising that Defendants "will not sue" is sufficient to dispel the potential confusion the "discount program" language creates.

The court agrees with Plaintiff that the letter's offer of a "discount program designed to save [the letter's recipient] money" could plausibly lead an unsophisticated consumer to believe that the time-barred debt is legally enforceable. It is plausible that a least sophisticated consumer could interpret this language as implying that if she were to decline the discount program, that Defendants would be able to collect the full amount of the debt. More specifically, the letter's language providing "[a]ct now to maximize your savings," could create the impression to the reader that if she did not "act now," that she would have to pay more in the future.

14

Next, the court cannot conclude as a matter of law that the letter's "will not sue" language is sufficient to dispel the potential confusion that the "discount program" language creates. The letter failed to specifically disclose that the debt was time-barred by Utah's statute of limitations. The letter only generally explained that "the law limits how long you can be sued on a debt" and that "because of the age of the debt," Defendants "*will* not sue you for it . . . ." (ECF No. 2-2) (emphasis added). The offer of a "discount program," read together with the conclusion providing that Defendants "will" not sue, instead of "cannot" sue, could lead the least sophisticated consumer to believe that Defendants had simply chosen not to sue—not that they were barred from doing so. The letter can therefore plausibly be read as making "false representation[s] about the character, amount, or legal status of [a] debt" in violation of 15 U.S.C. § 1692e(2)(A) or as making an implicit "threat to take [an] action that cannot legally be taken," in violation of 15 U.S.C. § 1692e(5).

Recommendations from the Federal Trade Commission and proposals from the Consumer Financial Protection Bureau both provide support for the court's conclusion.[8] And at

---

[8] The court reaches this conclusion after carefully considering the parties' briefs. The court also considers the interpretations and recommendations of the FTC because "the Federal Trade Commission holds some interpretive and enforcement authority with respect to the FDCPA." *Carter v. AMC, LLC*, 645 F.3d 840, 843 (7th Cir. 2011) (citing 15 U.S.C. §§ 1692k(e), 1692*l*, 1692*o*). The FTC has noted:

> because most consumers do not know or understand their legal rights with respect to the collection of time-barred debt, the Commission believes that in many circumstances such a collection attempt may create a misleading impression that the collector can sue the consumer in court to collect the debt, in violation of . . . the FDCPA.

*Repairing a Broken System: Protecting Consumers in Debt Collection Litigation and Arbitration*, Federal Trade Commission, July 2010 at 26 (2010 FTC Report), available at https://www.ftc.gov/reports/repairing-broken-system-protecting-consumers-debt-collection-litigation, (last visited September 26, 2018). Because "most consumers" do not understand their legal rights when it comes to the collection of time barred debt, the court finds that the 2010 FTC Report provides further support for the court's conclusion that it is plausible that the letter at issue could "create a misleading impression" *id*., that the Defendants can sue to collect the debt.

Additionally, under the FDCPA, Congress has provided rulemaking authority to the Consumer Financial Protection Bureau (CFPB). *See* 15 U.S.C. § 1692*l*(d) ([T]he [CFPB] may prescribe rules with respect to the collection of debts by debt collectors . . . ."). "On July 28, 2016, the [CFPB] published an Outline of Proposals Under Consideration (the 'Outline') . . . ." *Fair Debt Collection Practices Act Annual Report 2018*, Consumer Financial Protection

least one other district court has found that a dunning letter with very similar language was plausibly misleading to the least sophisticated consumer. *See Richardson v. LVNV Funding, LLC*, No. 16 C 9600, 2017 WL 4921971, at *1 (N.D. Ill. Oct. 31, 2017).

For all of these reasons, the court concludes that the letter is plausibly misleading to the least sophisticated consumer. The court therefore DENIES Midland's 12(b)(6) Motion as it relates to Ms. Gunther's second allegation of her first claim.

### III. UCSPA
**B.** <u>Collection of Time-Barred Debts Under the USCPA (Second Claim)</u>

As noted above, Ms. Gunther, in her second claim for relief, alleges that Midland violated the UCSPA in two different ways. First, she appears to allege that Midland engaged in "deceptive practice[s]" when Midland demanded payment from Ms. Gunther on "debts not legally assigned to them." (Compl. ¶ 44, ECF No. 2-1 at 7.) ("Defendants . . . dunning actions to collect debts not legally assigned to them . . . is a deceptive practice designed to take advantage of consumers who may not know that the debt claimed by [Midland] is not legally enforceable or due to them.")). Second, she appears to allege that Midland engaged in "deceptive practice[s] by

---

Bureau, March 20, 2018 at 47 available at https://www.consumerfinance.gov/data-research/research-reports/fair-debt-collection-practices-act-annual-report-2018/ (last visited September 26, 2018). The CFPB received input on those proposals and is "continuing to consider the feedback it received . . . subsequent to publication of the Outline." *Id*. at 47-48. One of the proposals "would require a debt collector to provide a time-barred debt disclosure when it seeks to collect a time-barred debt." *Small Business Review Panel for Debt Collector and Debt Buyer Rulemaking*, Consumer Financial Protection Bureau, July 28, 2016 at 20, available at https://www.consumerfinance.gov/about-us/newsroom/consumer-financial-protection-bureau-considers-proposal-overhaul-debt-collection-market/, (last visited September 26, 2018). "The disclosure itself would consist of a brief, plain-language statement informing the consumer that, because of the age of the debt, the debt collector **cannot** sue to recover it." *Id*. at 20 (emphasis added).

Similar to the CFPB's proposal, the FTC recommends "clearly and prominently disclosing to consumers before seeking payment on . . . time-barred debt that because of the passage of time, they **can** no longer sue in court to collect the debt or otherwise compel payment. 2010 FTC Report 26–27 (emphasis added). The court finds that the CFPB's proposal and the FTC's recommendation are entitled to respect. Both provide support for the court's conclusion that Defendants' word choice, "will not sue," as opposed to "cannot," when coupled with the "discount program," is plausibly misleading to the least sophisticated consumer.

16

"failing to disclose that a voluntary payment may revive or toll the statute of limitations."
(Compl. ¶ 44, ECF No. 2-1 at 7.)

1. A Violation of the UCAA Does Not Provide a Basis for a USCPA Claim

Ms. Gunther's second claim, that Midland engaged in deceptive practice under the USCPA by attempting to collect on debts "not legally assigned to them," fails for the same reason her FDCPA claim failed in Part II.A.1 above—because there is no private cause of action under the UCAA. Ms. Gunther argues that, because of the UCAA, "[d]efendants were never allowed to purchase Gunther and other time-barred debts and Defendants could not lawfully collect on these debts." (ECF No. 15 at 12.) And, Ms. Gunther argues that "[t]he unlawful collection of debts [under the UCAA] result[s] in a violation of the . . . UCSPA since [it] bar[s] unfair or deceptive practices . . . ." (ECF No. 15 at 12.) Ms. Gunther's first allegation of Count II fails because the court cannot transform a (purported) violation of the UCCA into a private right of action under the USCPA. In other words, even if Midland violated the UCAA, "the law simply affords [Ms. Gunther] no relief." *Mortg. Elec*, 680 F.3d at 1202. Dismissal is appropriate.

The court therefore GRANTS Midland's 12(b)(6) Motion as it relates to Ms. Gunther's first allegation of her second claim.

2. The Law Provides No Relief for Midland's Alleged Misconduct

Ms. Gunther alleges that Midland engaged in deceptive practices by failing to disclose in the dunning letter that under Utah law a voluntary payment could revive the statute of limitations. Before discussing Ms. Gunther's argument, the court finds it helpful to briefly discuss a Seventh Circuit case dealing with a similar issue under Illinois law.

In *Pantoja v. Portfolio Recovery Assocs., LLC*, the Seventh Circuit discussed "the danger of resetting the statute of limitations" "under Illinois law." 852 F.3d 679, 684 (7th Cir. 2017).

The court noted that in Illinois, "[t]he statute of limitations for written contracts and debts is ten years." *Id*. The Illinois statute further provided that "'if any payment or new promise to pay has been made, in writing . . . within *or after* the period of 10 years, then an action may be commenced thereon at any time within 10 years after the time of such payment or promise to pay.' That is, a new payment or written promise to pay starts a new ten-year clock." *Id*. (emphasis added) (quoting 735 ILCS 5/13-206). The court then explained the danger of resetting the statute of limitations:

> Before [the plaintiff] received defendant's letter, [the plaintiff] had an absolute defense to any possible collection suit, which would have been illegal to file. If [the plaintiff] had made or promised to make a partial payment, [the plaintiff] could have been sued, likely as a pro se defendant, in a new suit.

*Id*. at 685.[9] The court held that the letter was misleading and deceptive because it was silent "about the significant risk of losing the protection of the statute of limitations." *Id*.

Ms. Gunther's argument fails because unlike Illinois law, in Utah partial payment on a debt that is past the limitations period does not revive the debt's statute of limitations. *See State Bank of S. Utah v. Troy Hygro Sys., Inc.*, 894 P. 2d 1270, 1276 (Utah Ct. App. 1995) ("part payment . . . does not extend the limitations period if the . . . payment . . . occurs after the applicable statute of limitations has run.")). What's more, the Tenth Circuit, in an unpublished opinion, relied on *Troy Hygro* in interpreting Utah law regarding whether written acknowledgment of a debt can extend the statute of limitations if the acknowledgment occurs after the statute of limitations has expired. *McGrath v. Fogarty*, 643 F. App'x 761, 763 (10th Cir. 2016) ("Even if the May 2014 affidavit qualifies as a written acknowledgement of the debt,

---

[9] The court did note that under Illinois law "[t]he applicable statute of limitations could also be the five-year limit of 735 ILCS 5/13-205, which seems to apply if the plaintiff-debt collector does not have written proof of the debt." *Pantoja* 852 F.3d at 684 (citations omitted). But "whatever the precise scope of the Illinois law on restarting the statute of limitations with a partial payment or new promise to pay, either step would have put [the plaintiff] in a much worse legal position than he would have been in before taking the step." *Id*.

under Utah law it cannot extend the statute of limitations if it 'occur[red] *after* the applicable statute of limitations ha[d] run.'" (*citing Troy Hygro*, 894 P.2d at 1276)).

Ms. Gunther appears to allege that Midland engaged in "deceptive practice[s] by "failing to disclose that a voluntary payment may revive or toll the statute of limitations." (Compl. ¶ 44, ECF No. 2-1 at 7.) Midland cannot have acted deceptively in failing to tell Ms. Gunther that partial payment would revive the statute of limitations because, under Utah law, partial payment would not have revived the statute of limitations. The purpose of Rule 12(b)(6) "is to allow the court to eliminate actions that are fatally flawed in their legal premises and destined to fail . . . ." *Adams v. Wells Fargo Bank N.A. for SASCO Mortg. Loan Tr. 2005-WF3*, No. 1:17CV61, 2017 WL 4083153, at *2 (D. Utah Sept. 14, 2017). Ms. Gunther's argument regarding Midland's purported failure to disclose that payment would revive the statute of limitations is such an action.

The court therefore GRANTS Midland's 12(b)(6) Motion as it relates to Ms. Gunther's second allegation of her second claim.

## CONCLUSION

To summarize:

(I)  Ms. Gunther's first allegation of her first claim was that Midland violated the FDCPA by taking assignments of time-barred debt for collection in violation of Utah law. The court GRANTS Midland's 12(b)(6) Motion as it relates to Ms. Gunther's first allegation of her first claim.

(II) Ms. Gunther's second allegation of her first claim was that Midland violated the FDCPA by sending dunning letters that attempted to settle time-barred debs without sufficiently disclosing that the debts are time-barred, and by suggesting that payment on the time-barred debt would save the letter's recipient money. The court DENIES

Midland's 12(b)(6) Motion as it relates to Ms. Gunther's second allegation of her first claim.

(III) Ms. Gunther's first allegation of her second claim was that Midland violated the USCPA by engaging in deceptive practices when it demanded payment from Ms. Gunther on debts not legally assigned to them. The court GRANTS Midland's 12(b)(6) Motion as it relates to Ms. Gunther's first allegation of her first claim.

(IV) Ms. Gunther's second allegation of her second claim was that Midland violated the USCPA by engaging in deceptive practices when it failed to disclose that a voluntary payment may revive or toll the statute of limitations. The court GRANTS Midland's 12(b)(6) Motion as it relates to Ms. Gunther's second allegation of her second claim.

Dated this 26th day of September, 2018

BY THE COURT:

CLARK WADDOUPS
United States District Judge